[Crim. No. 10397. Second Dist., Div. Four. Oct. 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JESSE HARUM MORENO, Defendant and Appellant.

---

Jesse Harum Moreno, in pro. per., and Phillip Bronson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J. — Defendant appeals from a judgment entered upon his conviction, in a trial by the court, of three counts which charged the violation of section 11531 of the Health and Safety Code, sale of marijuana. He was sentenced to state prison after rejection by the Youth Authority and the denial of probation by the court. ▆ In the single contention raised by defendant, he maintains that the uncontradicted testimony of the police officer who made the alleged purchases, established the defense of entrapment as a matter of law.

The People's case consisted chiefly in the testimony (as contained in the preliminary hearing transcript), of Sam Epolito, a Los Angeles police officer assigned to undercover work by the narcotics division of the police department. The officer testified that he purchased marijuana from defendant on March 17, March 25, and April 3, 1964. On March 17 he met appellant, codefendant Marcus Luna and one Bobby Lee Williams, at the corner of Palos Verdes and Sixth Street, in San Pedro. Luna asked the officer if he wanted to get some "weed." The officer said "Yes" and gave Luna $5.00. Both appellant and codefendant Luna told Officer Epolito and Williams to go to a pool hall located at 531 South Beacon Street and to wait there. After Williams received a phone call at the pool hall, Williams and Officer Epolito drove to the corner of Twelfth and Beacon Streets. They waited a few minutes, and then appellant came over to their automobile and handed the officer 10 cigarettes and $2.00 in change. On March 25 Epolito met appellant at the Beacon Street pool hall. Appellant asked the officer if he wanted some "joints". Epolito answered affirmatively. They then drove in the officer's car to Cabrillo and Crestwood Streets where appellant got out of the car and left the officer. He returned a short time later with four cigarettes and gave them to the officer. In exchange Epolito

gave him $2.00. On April 3 Officer Epolito met appellant at 711 West Second Street, San Pedro. They drove in the officer's car to an alley off Mesa Street between 15th and 16th Streets. Epolito handed appellant $20 and asked appellant to get him two "cans" of marijuana. Appellant left the car and entered an apartment house. When he returned they drove to 711 West Second Street. Appellant left the car, went over to his own car, which was parked nearby, and opened the trunk. He then came back to the officer's car and handed the officer two wax paper sacks. On each of the three above enumerated occasions Officer Epolito took the items which appellant had given him to the property division of the police department. It was stipulated that the items were found to contain marijuana.

On cross-examination Officer Epolito was asked whether, when he first met appellant, he had "befriended" him. In answer, the officer testified that he first met appellant a few days before the first "buy"; on this occasion he had spent about half an hour helping appellant to put brakes on his car; he also drove appellant to a junk yard to buy some parts for the car. In response to further questioning by defense counsel Epolito testified that, during the period prior to the first sale, he had spent some time at appellant's sister's house; during this time appellant had not approached him in regard to the purchase or sale of any narcotics; the officer first brought up the question of narcotics when he asked appellant if he could get the officer a half pound of narcotics.

In his defense appellant testified that he purchased marijuana for Officer Epolito on the three occasions alluded to by the officer, but that he had done so only after the officer had repeatedly asked him to. He made the purchases because the officer had done him favors. When the officer first asked for marijuana, appellant told him that he had no idea where he could get it. Epolito then told him about a fellow he knew by the name of Mike or Ike. The officer said he did not want to approach this person because he did not get along with his wife. Appellant made the three buys from this man.

Factually, the oft cited case of *People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928], is quite similar to the case before us. In *Benford,* as here, the defendant contended that the defense of entrapment was established as a matter of law. The defendant in that case was charged with and convicted in a trial by the court of the sale of marijuana. The chief prosecution witness, a police officer, testified that he had asked defendant if they "could get together the next day to go out and pur-

chase some marijuana.'' On the following day defendant and the officer met and the officer drove defendant to a certain location where he handed defendant $15. Defendant left the car and returned a short time later with a bag containing marijuana which he gave the officer. On cross-examination, the officer testified he had met defendant and his wife through a neighbor of defendant about a month before the purchase; he had visited defendant at his apartment and, on a number of occasions, had been with him at a tavern. The officer answered affirmatively when asked whether it would be a fair statement to say that on two or three occasions prior to the date of the purchase of marijuana, the officer had mentioned the subject of narcotics to defendant.

The court in *Benford* pointed out that, although uncontradicted parts of defendant's testimony tended to establish that defendant was induced to obtain the marijuana for the officer because of the officer's ''repeated requests, gestures of friendship, and appeals to sympathy,'' the defendant in his argument on appeal quite properly made no attempt to rely on such testimony, ''. . . for the trier of fact was not required to give it credence and it is not our function to reappraise its effect. [Citations.]'' (*People* v. *Benford, supra,* at p. 5.) The court further stated that the availability of the defense of entrapment in California depends on the question of whether the required criminal intent originated in the defendant's mind or in the mind of the police officer; where the defendant has such a preexisting criminal intent, the fact that when solicited by a police decoy he commits a crime, does not show entrapment; and, the inquiry by an appellate court is not whether the prosecution has overcome the defense, but rather, whether the evidence presented by the prosecution, as a matter of law, shows entrapment. The court concluded that the officer's testimony—which showed that he had obtained an introduction to defendant, cultivated his friendship for a month, introduced the subject of narcotics and finally afforded defendant the means and opportunity to obtain the marijuana, did not establish entrapment as a matter of law; that such conduct did not constitute excessive persuasion but was proper police investigation into the illicit traffic in drugs. The court stated (in a footnote at p. 13): ''We cannot assume, in the face of the presumption of innocence of wrong, regular performance of official duty, and obedience to law [citations] that the officer's dealings with defendant had as their purpose the manufacturing rather than the investigation of crime.''

Here, as in *People* v. *Benford, supra,* the defense of entrapment was not established as a matter of law. On the contrary, substantial evidence was presented tending to establish that the criminal intent to commit the crime originated in the mind of defendant. The officer's testimony as to defendant's knowledge where marijuana could be obtained, the intricate methods used by defendant in delivering it—undoubtedly designed to keep secret the means of supply, and the fact that here multiple sales were made, clearly support this conclusion.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 12, 1966.