[Crim. No. 14933. Second Dist., Div. Four. Apr. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD RAY FOSTER, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—In one information, appellant was charged with escaping from the state correctional facility at Soledad on February 17, 1967 (Pen. Code, § 4530, subd. (b)), and with a burglary occurring between February 18-19, 1967 (Pen. Code, § 459), both felonies. In a second information he was charged with another escape, this time from a county jail, on April 19, 1967 (Pen. Code, § 4532, subd. (b)), also a felony. To each charge appellant pled "not guilty" and "not guilty by reason of insanity," and denied the allegations of two prior convictions. By consent, the cases were consolidated for trial. At the guilt trial, appellant was found not guilty of burglary but guilty of both escapes; the priors were found to be true. A sanity trial (Pen. Code § 1026) ensued before a different jury which found appellant sane at the time of both escapes. On February 5, 1968 he was sentenced to state prison for the term prescribed by law. He appeals from the judgment, alleging two grounds for reversal.

I. *Was The District Attorney Guilty Of Prejudicial Misconduct During The Trial?*

Appellant claims the prosecuting attorney prejudiced his case by improperly asking questions of two defense witnesses during the sanity trial. At that trial defendant called 12 witnesses one of whom was a medical doctor specializing in psychiatry, the others being non-expert witnesses. Of these 11, Lloyd Chandler, Joe Hendron and Samuel Massa testified on cross-examination to having been convicted of felonies, Massa

having had 9 such convictions. On direct examination as witnesses for appellant, Byron ,Stewart, James Daniels, Jose Quinones, Vance Dubay and Carl Shuck all testified to meeting appellant while they were confined in the county jail. Chandler, Massa and Shuck had testified at the guilt trial but the others had not.

Appellant objects to the interrogation of Daniels and Quinones by the prosecution. James Daniels was cross-examined as follows:

"Q. Now Mr. Daniels, I will ask you, have you ever been convicted of a felony?

"A. I'm not sure, sir. I don't think so.

"Q. You're not quite sure?

"A. No sir."

No objection was made to this quesioning by defense counsel who, on redirect examination, initiated the following:

"Q. Mr. Daniels, you said you don't think you have been convicted of a felony. You may explain that, if you like.

"A. Well, the charge was always dropped to a lower degree and, I wasn't sure whether it was not a felony or a misdemeanor."

On cross-examination of Joseph Quinones, the following occurred:

"Q. Sir, have you ever been convicted of a felony before?

"A. I was tried on a felony, but I served County time so, I don't know if it was a felony or not."

No objection was made to this by defense counsel, but the trial court interjected, stating:

"THE COURT: These questions of that nature should not be asked, Mr. Quall [the prosecuting attorney], unless you are prepared to prove that, in fact, the defendant you asked that question of was convicted of a felony. I hope you are prepared to prove it in these last two instances, because if you cannot prove it, the question is wholly improper."

This remark was made in open court before the trial jury. The district attorney asked leave to approach the bench stating: "It is my understanding, if I have a reasonable belief that these men have been,—" when he was interrupted by the court and neither allowed to finish nor to make a record at the bench.

The failure of defense counsel to object to the questions put by the prosecution is fatal to his appeal and since the trial court had no objection on which to rule we have no ruling to review. ■ "The admissibility of evidence will not be

reviewed on appeal in the absence of a proper objection in the trial court.'' *People* v. *Johnson* (1967) 253 Cal.App.2d 396, 400 [61 Cal.Rptr. 225]. ▇ ''Misconduct of the district attorney to which no objection is made in the trial court may not be urged as reversible error, unless the cause is closely balanced or the conduct is of such a nature that its harm could not be obviated.'' *People* v. *Roberts* (1963) 213 Cal. App.2d 387, 398 [28 Cal.Rptr. 839].

One well may inquire whether the simple question, ''Have you ever been convicted of felony?'' is improper. Evidence Code, section 788 provides: ''For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness *or* by the record of the judgment that he has been convicted of a felony. . . .'' (Italics added.) Alternative methods of impeachment are thus provided. It should be borne in mind that the questions were asked of witnesses and not of the defendant, himself. The prosecution in a case cannot, and often does not, always know what witnesses the defendant will call or, indeed, if he will call any at all. Frequently there is no chance to conduct any extrajudicial investigation into the background of witnesses and it would seem clear enough that the code section recognizes this by authorizing a simple inquiry of witnesses while on the witness stand.

The questions asked by the prosecutor were neither leading, suggestive nor accusatory. He did not phrase his questions so as to indicate that he held a belief, or had secret information, that the witness had sustained a felony conviction. Questions put in that form, for instance: ''You were convicted of the felony of robbery in 1964, were you not?'' have been held improper and rightly so, where not asked in the possession of sufficient information to justify such a question. In the case at bench, the question was not so phrased.

However, there is some apparent authority for appellant's contention. In *People* v. *Conover* (1966) 243 Cal.App.2d 38, 52 [52 Cal.Rptr. 172], the prosecutor asked a witness, ''Have you ever been convicted of a felony, Mr. Hundley?'' and received the reply, ''No, I haven't.'' The court states (p. 52): '' ▇ While for impeachment purposes a prior felony conviction may be shown by the examination of the witness (Code Civ. Proc., § 2051), such cross-examination is limited by the requirement that it must be conducted in good faith (*People* v. *Linyard* (1957) 151 Cal.App.2d 50, 55 [311 P.2d 57] ) and the questioner should be prepared to show by documentary evidence that the witness has suffered a prior convic-

tion in the event he denies it. (*People* v. *Perez, supra,* 58 Cal.2d 229, 238-240 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Roberts* (1963) 213 Cal.App.2d 387, 397 [28 Cal.Rptr. 839] . . .''.

The court went on to find this question was improper in light of the prosecutor's failure to offer proof of a prior conviction. Combined with some eight other instances of alleged misconduct by the prosecution, the court found the case had been prejudiced and reversed, stating it was a close one on the evidence. This requires an investigation of the authorities relied upon by that court.

One of them, *People* v. *Perez* (1962) 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946], appears to be the leading case on the subject. Therein it is stated (pp. 238-239) that while it: ''. . . 'may be shown by the examination of the witness, or the record of the judgment,' thus permitting a witness to be orally questioned concerning prior felony convictions (*People* v. *Allen,* 189 Cal.App.2d 706, 710 [11 Cal.Rptr. 440], '[s]uch cross-examination is limited by the requirement that it must be conducted in good faith.' (*People* v. *Linyard,* 151 Cal.App.2d 50, 55 [311 P.2d 57].) It would appear that an insufficient showing of good faith was made in the instant circumstances. ██ As stated in *People* v. *Craig,* 196 Cal. 19, 28 [235 P. 721], 'The usual manner of making proof of a prior [felony] conviction is to ask the witness *who has suffered such a conviction* if he has been theretofore convicted of a felony, and *if he denies that he has been so convicted, to produce a copy of the judgment of conviction.*' (Italics added.) ''

That case also involved asking a defense witness, ''Have you been convicted of a felony?'' to which he responded, ''No.'' In holding that such a question must be asked in ''good faith'' the Supreme Court relied upon *People* v. *Linyard.* A review of *Linyard* (1957) 151 Cal.App.2d 50 [311 P.2d 57] causes us to note two features of it. First, the questions therein asked were not as simple as here involved. They were more extensive and of the accusatory type, to-wit, ''Weren't you convicted of possession of heroin . . . ?'' Secondly, citing no authority or reason whatsoever therefor, the court stated (p. 55) ''Such cross-examination is limited by the requirement that it must be conducted in good faith.'' We are left to speculate on the source and rationale of such rule. Code of Civil Procedure, section 2051 (forerunner of present Evid. Code, § 788) made no requirement of good faith; it

seemingly is a court-developed rule. Applied, as it was in *Linyard*, to an accusatory question it has merit since such a question might well plant seeds of suspicion in the minds of jurors, despite a subsequent instruction to the effect that a question is not evidence and is of significance only as it tends to explain an answer. It is highly questionable, however, that a simple question, "Were you ever convicted of a felony?" is subject to the same criticism. Cases since *Linyard* (with the exceptions of *Conover* and *Perez*) all have involved either questioning of an accusatory type or questioning purportedly attempting to clarify ambiguous answers. (See: *People* v. *Allen* (1961) 189 Cal.App.2d 706, 709-710 [11 Cal.Rptr. 440]; *People* v. *Hays* (1967) 250 Cal.App.2d 373, 377-378 [58 Cal.Rptr. 293]; *People* v. *Roberts* (1963) 213 Cal.App.2d 387, 397-398 [28 Cal. Rptr. 839], and similar cases.)

As noted, Evidence Code, section 788 permits, as did Code of Civil Procedure, section 2051, development of felony convictions by examination of the witness. It is appropriate under the code section, and seems certainly harmless, to ask such witness if he has ever been convicted of a felony. If he replies, "No" he is not stigmatized in the eyes of the jury, and if he replies, "Yes" the prosecution has a right to pursue and further develop such within the limits of relevance. It is illogical to require that the prosecution outside of court first investigate prior convictions of each defense witness when there may have been no opportunity to do so.

In any event, and assuming the questioning by the prosecutor was improper in the present case, we fail to find any prejudice. With so many of appellant's witnesses of unsavory background, improper questioning of the two mentioned cannot have been the cause of any substantial prejudice. In denying appellant's motion for new trial, the trial court stated: "It shouldn't have been asked but, a number of the witnesses were, in fact convicted felons. Those that were not, were in jail, and the jury knew that. I can't feel that whatever error that amounted to played any part in the decision of this case, Gentlemen. I don't think it did so, the Motion on that ground is likewise denied . . ." We agree with the trial court that no prejudice resulted, even assuming the questions were improper.

It is noted from the cases reviewed that in none of them was there a reversal for the sole reason of such questioning and that other errors appeared so as to create a cumulative effect of prejudice. (See: annotation, 3 A.L.R.3d 965.) Addi-

tionally, when the prosecuting attorney requested an opportunity, at the bench and out of the hearing of the jury, to inform the court of the information available to him, the court refused to permit him to justify his question. Thus the record does not tell us whether "good faith," or lack of it, was involved.

After an examination of the entire cause, including the evidence, we are of the opinion that it is not reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error claimed. (See: *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Roberts* (1963) *supra,* 213 Cal.App.2d at p. 398.)

II. *Is The Rule of M'Naghten's Case So Outmoded That It No Longer Should Be Followed?*

Appellant attacks the rule in *M'Naghten* (8 Eng.Rep. 718 (H.L.) [1843]), claiming it is not modern in that it lacks relevance in the light of present-day scientific advancements. Appellant cites us to no authority and, indeed, does not even refer to the record in the present case. These omissions alone would entitle us to consider the point frivolous. Nevertheless, we will discuss it.

 The court instructed the jury using CALJIC No. 801 (1967 Rev.), the pertinent part of which states that: "The test of sanity is this: First, did the defendant have sufficient mental capacity to know and understand what he was doing, and second, did he know and understand that it was wrong and in violation of the rights of another?" This test for insanity as a criminal defense has many times been approved in this state. Though it has been the subject of adverse criticism it is the law of California. (See discussion in 1 Witkin, Cal. Crimes (1963 ed.) 128-134, §§ 136-140 and, most recently, *People* v. *Wolff* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959].)

In the light of all the foregoing, the judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.