[No. B047506. Second Dist., Div. Two. Mar. 7, 1991.]

THE PEOPLE, Plantiff and Respondent, v.
GENARD BARON WILLIAMS, Defendant and Appellant.

COUNSEL

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, William T. Harter and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NOTT, J.—A jury convicted appellant Genard Baron Williams of second degree robbery (Pen. Code, § 211). In a separate proceeding, the trial court

found true three of four allegations that he had suffered prior felony convictions. The court sentenced him to 15 years in state prison. We affirm.

Appellant argues that (1) the trial court erred when it limited his examination of the victim; (2) he was wrongly required to stand trial while wearing jail clothing; (3) he was denied effective assistance of counsel; (4) the trial court improperly permitted him to be impeached through the use of three prior convictions; (5) the prosecution illegally sought to impeach him with a prior conviction which it could not prove; and (6) the trial court incorrectly sentenced him to the upper term for the robbery conviction.

## FACTS

Viewing the evidence, as we must, in the light most favorable to the judgment (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the record reveals that on the morning of August 1, 1989, appellant attacked Jesus Nunez from behind as the latter drank coffee at the Capital Donut Shop. During the struggle, appellant took $11 and a pocketknife from Nunez. At one point, appellant held the knife up against Nunez's body.

After appellant fled from the doughnut shop, Nunez observed him at a liquor store. He then followed appellant to a parking lot where he confronted him and demanded the return of his money. Another fight ensued between the men until the police arrived.

At trial, Nunez identified appellant as the robber. Peary Kong, an employee of the doughnut shop, also testified she witnessed the robbery and that appellant was the perpetrator. Appellant took the witness stand and denied he committed the offense.

## DISCUSSION

Appellant is an African-American. Nunez is an Hispanic. On cross-examination of Nunez, appellant sought to discover the length of his residency in the United States. The trial court ruled the question irrelevant as an attempt to elicit the witness's citizenship status. However, the court did grant him permission to inquire into Nunez's past experiences with Black people. Nunez responded that he never had dealings with Blacks. Appellant contends the trial court's ruling improperly restricted his right to challenge a cross-racial identification. The argument is groundless.

Appellant is correct that a jury may consider the cross-racial or ethnic nature of an identification when evaluating the credibility of eyewitness testimony. (*People* v. *McDonald* (1984) 37 Cal.3d 351, 367-369 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]; CALJIC No. 2.92 (5th ed. 1988).) The rule is premised on the fact that scientific studies have shown cross-racial identifications can be unreliable. Nonetheless, once Nunez admitted he never interacted with Black persons, further examination concerning his residency would not have developed additional insight into his ability to correctly identify an assailant of a different race.

We also find unpersuasive appellant's related argument that the trial court's ruling erroneously precluded him from indirectly establishing that Nunez possibly held a bias against Blacks. A complaining witness may be asked questions that inferentially establish a prejudice against the race to which the defendant belongs. (*In re Anthony P.* (1985) 167 Cal.App.3d 502, 511-513 [213 Cal.Rptr. 424].) Still, the duration of time Nunez has spent in this country would have no tendency in reason to prove that he held a bias against Black people.

■ Appellant further complains that even though his counsel raised no objection, the trial court erred by allowing him to stand trial before a jury while clad in identifiable jail apparel. We disagree.

As the United States Supreme Court held in *Estelle* v. *Williams* (1976) 425 U.S. 501 [48 L.Ed.2d 126, 96 S.Ct. 1691] [rehg. den. 426 U.S. 954 (49 L.Ed.2d 1194, 96 S.Ct. 3182)], *compelling* an incarcerated defendant to wear prison garb in front of a jury violates federal due process and equal protection rights because it may undermine the presumption of innocence and place the accused at a distinct disadvantage to the defendant who can afford bail. The particular evil to be prevented is the element of compulsion which does not occur until the defendant interposes an objection. "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury. [Citations.]" (*Id.* at pp. 507-508 [48 L.Ed.2d at p. 133].) A defendant's failure to raise an objection to his prison dress *"for whatever reason*, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. [Fn. omitted.]" (*Id.* at pp. 512-513 [48 L.Ed.2d at p. 135], italics added.)[1]

---

[1] Justice Powell in a concurring opinion, joined by Justice Stewart, described the right against coerced attendance in jail clothing as a "trial-type right." As such, a client would be bound by his attorney's decision. (425 U.S. at p. 515 fn. 4 [48 L.Ed.2d at p. 137].) Justice Brennan, on the other hand, in his dissent, which was joined by Justice Marshall, stated that

While we think the safer practice is for the trial court to take a personal waiver from a defendant regarding his right to wear ordinary clothing before the commencement of a jury trial, the court is under no sua sponte duty to raise the issue. Decisions from other jurisdictions squarely confronting the matter have rejected the concept that trial courts must inquire into whether a defendant desires to wear street attire. (*United States* v. *Rogers* (9th Cir. 1985) 769 F.2d 1418, 1421; *State* v. *Coleman* (La.App. 1989) 552 So.2d 471, 472; *Young* v. *State* (1984) 283 Ark. 435 [678 S.W.2d 329, 330]; see also *State* v. *Smith* (1981) 3 Ohio.App.3d 115 [444 N.E.2d 85, 91].) "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." (*Estelle* v. *Williams, supra*, 425 U.S. 501, 512 [48 L.Ed.2d 126, 135].)

We also disagree with appellant that *People* v. *Taylor* (1982) 31 Cal.3d 488 [183 Cal.Rptr. 64, 645 P.2d 115] supports his assertion that the right against being compelled to wear jail clothing cannot be relinquished without a knowing and intelligent waiver by him. In *Taylor*, defendant's attorney was unaware of a local rule requiring civilian dress to be submitted to his client through jail personnel. When defense counsel brought the attire directly to the courtroom, the trial court refused to permit defendant to change clothing. The California Supreme Court on appeal followed the holding in *Estelle* and stated the trial court had infringed upon defendant's federal constitutional rights. In reaching its decision, the *Taylor* court rejected the People's argument that defense counsel's disobedience of the regulation amounted to a waiver. The court noted that because defendant's attorney was ignorant of the policy, there could not have been an intentional surrender of the right against forced appearance in jail garb. (*Id.* at pp. 496-498.) Clearly, appellant in the instant case can find no assistance in *Taylor*. Unlike the defendant there, appellant never perfected the right against coerced wearing of jail clothing by first seeking permission to wear civilian garments.

Also unavailing is appellant's contention that the failure of his trial attorney to raise an objection to his prison garb denied him effective assistance of counsel. Nothing in the record indicates trial counsel's inaction was based on a misguided tactical decision. On the contrary, it is reasonable to presume trial counsel evaluated the strengths and weaknesses of the case and concluded having appellant appear in jail clothing would gain him needed sympathy from the jury.

---

in his view a defendant cannot surrender the right without making a knowing, voluntary, and intelligent waiver. (*Id.* at pp. 516-517, fn. 2 [48 L.Ed.2d at p. 138].)

■ Appellant next variously contends the trial court erroneously allowed the prosecution to impeach him with prior felony convictions. At a hearing held outside the presence of the jury, the prosecution presented appellant's rap sheet. It contained entries of two robbery convictions in 1981 and one assault with a firearm conviction in 1984. Defense counsel conceded the admissibility of the assault prior, but objected to the robbery convictions. The trial court ruled the robbery priors admissible, but ordered that they could only be referred to as felonies involving theft. Appellant then testified and during direct examination admitted the priors.

Appellant first takes exception to the fact that the record fails to explicitly reflect that the trial court weighed the assault conviction's prejudicial effect against its probative value. (See Evid. Code, § 352; *People* v. *Frank* (1985) 38 Cal.3d 711, 731-732 [214 Cal.Rptr. 801, 700 P.2d 415].) The argument is meritless. In view of defense counsel's concession, the trial court was under no obligation to conduct a balancing test.

Secondly, appellant claims the prosecution committed misconduct by seeking to impeach him with a robbery conviction which it was later unable to prove at the court trial on the priors. We find no error. The People produced appellant's rap sheet which indicated he had suffered two prior robbery convictions in 1981. As long as the prosecution has a good faith belief in the existence of a prior, it may seek to use the conviction for the purpose of impeachment. A proper basis for establishing good faith is a witness's rap sheet. (*People* v. *Hays* (1967) 250 Cal.App.2d 373, 377-378 [58 Cal.Rptr. 293].)

■ Appellant's last complaint is that the trial court illegally selected the upper term as punishment for the robbery conviction. At the sentencing hearing, the court enumerated five aggravating factors and stated it found no circumstances in mitigation. Appellant insists that two of the aggravating circumstances are not established by the record, and that the remaining ones were not available for imposition of the high term because they were used to enhance his sentence. (See Cal. Rules of Court, rule 441(c).)

Notwithstanding appellant's contention, the record does support the trial court's finding that the robbery involved the use of a weapon and the threat of great bodily injury. Both are circumstances in aggravation. (Cal. Rules of Court, rule 421(a)(1), (2).) Nunez testified that appellant struck him in the face three times and tried to "prick" him with the knife. Based on these facts, the trial court reasonably found that the struggle could have escalated and ended with one of the combatants severely injured or killed.

Finally, even assuming the trial court wrongly made dual use of the other aggravating circumstances, we think no need exists to remand the matter

back for resentencing. A single factor in aggravation is sufficient to justify a sentencing choice. (*People* v. *Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692].) Considering the nature of the two valid aggravating circumstances, it is not reasonably probable that a different sentence would be imposed by the trial court. (See *People* v. *Dreas* (1984) 153 Cal.App.3d 623, 636-637 [200 Cal.Rptr. 586].)

The judgment is affirmed.

Roth, P. J., and Fukuto, J., concurred.